IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MELISSA HOPFINGER,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CITY OF NASHVILLE, ILLINOIS,<br>BRIAN FLETCHER, ERIK ROLF, JOSH<br>FARK, SUE FINKE, TERRY<br>KOZUSZEK, DOUG HARGEN, KELLY<br>SHERIDAN, and DENNIS<br>KELLERMAN,<br><br>　　　　　Defendants. | Case No. 18-cv-1523-NJR-MAB |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss Count IV of Plaintiff's First Amended Complaint filed by Defendant Brian Fletcher (Doc. 24) and a Partial Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim filed by Defendants City of Nashville, Illinois, Erik Rolf, Josh Fark, Sue Finke, Terry Kozuszek, Doug Hargen, Kelly Sheridan, and Dennis Kellerman (Doc. 29). Both motions are opposed by Plaintiff Melissa Hopfinger ("Hopfinger") (Docs. 35, 36).

### FACTUAL & PROCEDURAL BACKGROUND

Hopfinger initiated this lawsuit on August 21, 2018 (Doc. 1), and she filed her First Amended Complaint on October 30, 2018[1] (Doc. 17). Hopfinger is a former employee of

---

[1] Gregory Hopfinger, Melissa Hopfinger's husband, brought a separate employment discrimination action against City of Nashville, Illinois, and Brian Fletcher on February 12, 2018. *Gregory Hopfinger v. City of Nashville, Illinois, et al.*, 3:18-CV-257-NJR-DGW. Upon Defendant City of Nashville's Joint Motion to

Defendant City of Nashville, Illinois ("the City"), where she worked as an administrative assistant for the Police Department (*Id.* at ¶¶ 1, 4). At the time of the events at issue, Defendant Erik Rolf was the mayor of the City, Defendant Brian Fletcher was the Chief of Police, and Defendants Josh Fark, Sue Finke, Terry Kozuszek, Doug Hargen, Kelly Sheridan, and Dennis Kellerman were members of the Nashville, Illinois City Council (*Id.* at ¶¶ 5-7).

Hopfinger alleges that in July 2017 she had a serious health condition that required her to undergo a hysterectomy (*Id.* at ¶ 13). Before having surgery, she notified her supervisors: Police Chief Brian Fletcher and Greg Hopfinger, who is also her husband (*Id.* at ¶¶ 14-15). Greg Hopfinger notified the City's mayor and other City officials, including City Clerk Teressa Kurwicki (*Id.* at ¶ 17).

On July 17, 2017, Hopfinger underwent a hysterectomy (*Id.* at ¶ 16). She continued to work from home while on leave for part of the time (*Id.* at ¶ 19). Following her surgery, Hopfinger's doctor determined that she needed continued bed rest (*Id.* at ¶ 20). Greg Hopfinger notified Fletcher and Kurwicki about the ordered bed rest (*Id.* at ¶ 21). On August 29, 2017, Hopfinger was released to return to work (*Id.* at ¶ 22). When she returned the following day, the mayor told her the City was eliminating her position (*Id.* at ¶ 23). On September 1, 2017, Hopfinger was informed in writing that she was terminated as an employee of the City (*Id.* at ¶ 24).

Hopfinger alleges that at the time she was discharged, she was an eligible employee under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C.

---

Consolidate Cases (Doc. 32), the Court consolidated this case with Gregory Hopfinger's case for purposes of discovery only (Doc. 33).

§ 2612(a)(1)(D) (*Id.* at ¶ 25). Under the FMLA, 28 U.S.C. § 2614(a)(1), Hopfinger asserts the City was required to but failed to restore her to her position (*Id.* at ¶ 26). Hopfinger further claims that Defendants discharged her because of her association with her husband, who was fired on August 22, 2017, for opposing certain conduct by Fletcher (*Id.* at ¶¶ 42-43). Based on these actions, Hopfinger brings seven claims:

**Count I:** FMLA Interference against the City of Nashville, Illinois;

**Count II:** FMLA Retaliation against the City of Nashville, Illinois;

**Count III:** Breach of Contract against the City of Nashville, Illinois;

**Count IV:** First Amendment Association against the City of Nashville, Illinois, Brian Fletcher, Erik Rolf, Josh Fark, Sue Finke, Terry Kozuszek, Doug Hargen, Kelly Sheridan, and Dennis Kellerman;

**Count V:** First Amendment Retaliation against the City of Nashville, Illinois, Brian Fletcher, Erik Rolf, Josh Fark, Sue Finke, Terry Kozuszek, Doug Hargen, Kelly Sheridan, and Dennis Kellerman;

**Count VI:** Illinois Whistleblower Act against the City of Nashville, Illinois; and

**Count VII:** Retaliatory Discharge against the City of Nashville, Illinois.

(*Id.* at ¶¶ 8-74).

On November 21, 2018, Defendant Fletcher filed a motion to dismiss Count IV of the First Amended Complaint, in which Hopfinger alleges a First Amendment Association claim against him (Doc. 24). Fletcher first argues that Count IV fails to plausibly suggest that he denied Hopfinger the right to associate with her husband (Doc. 25 at p. 3). Second, Fletcher asserts that he is entitled to qualified immunity (*Id.* at p. 6) because the law is not clearly established that the termination of an employee under the facts asserted constitutes a deprivation of the right to freedom of association (*Id.* at p. 7).

Defendants the City, Rolf, Fark, Finke, Kozuszek, Hargen, Sheridan, and Kellerman also filed a motion to dismiss on November 21, 2018 (Doc. 29). These Defendants seek to dismiss Counts III, IV, and V of the First Amended Complaint (*Id.* at ¶¶ 3-5). Defendants argue that the breach of contract claim in Count III must be dismissed because the statutory remedies under the FMLA are exclusive (*Id.* at ¶ 3). Second, Defendants assert that Count IV must be dismissed because Hopfinger's freedom of association claim is a due process claim, and the First Amended Complaint fails to state a plausible claim for such relief. Defendants also contend that they are entitled to qualified immunity on this claim (*Id.* at ¶ 4). Finally, Defendants argue that Count V must be dismissed as to the City because Hopfinger is essentially reframing her FMLA claim as a civil rights action brought under 42 U.S.C. § 1983, and she fails to state a claim for that relief (*Id.* at ¶ 5).

## **LEGAL STANDARD**

Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must determine whether the complaint includes "enough factual information to state a claim to relief that is plausible on its face" and raise a right to relief above the speculative level. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Court of Appeals for the Seventh Circuit has clarified that, even after *Twombly*, courts must still approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged,

and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), *cert denied,* 668 U.S. 1148 (2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

ANALYSIS

I. **Motion to Dismiss Count IV filed by Defendant Fletcher**

In Count IV, Hopfinger brings a First Amendment Association claim against all Defendants. Specifically, she alleges that she was discharged because of her husband's exercise of free speech, that is, opposing the Police Chief's unlawful conduct to City officials.

Fletcher argues that Count IV is not a First Amendment claim, and it should instead be brought under the due process clause of the Fourteenth Amendment (Doc. 25 at p. 4), citing *Montgomery v. Steganiak*, 410 F.3d 933, 937 (7th Cir. 2005) (Doc. 25 at p. 4). Fletcher further argues that the conduct alleged fails to meet the "shocks the conscience" standard that applies to due process cases involving the liberty interest of intimate association, such as this one (*Id.* at pp. 4-5). Hopfinger responds that her claim is properly brought under the First Amendment, and the "shocks the conscience" standard is inapplicable to this case (Doc. 35, p. 3). Specifically, Hopfinger argues that *Montgomery* differs in that a property interest claim was raised in that case, and the "shocks the conscience" standard was applied only to that claim (*Id.*).

In *Montgomery*, the Seventh Circuit noted that the Supreme Court has recognized two distinct forms of constitutionally protected free association. *Id.* (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984)). The freedom of expressive association "arises from the First Amendment and ensures the right to associate for the purpose of

engaging in activities protected by the First Amendment." *Id.* (internal quotation marks omitted). The freedom of intimate association ensures "the right to enter into and maintain certain human relationships" and is "protected by the due process clause" of the Fourteenth Amendment. *Id.* (internal quotation marks omitted).

Hopfinger cites cases from the Second, Sixth, and Eleventh circuits to argue that the First Amendment protects freedom of intimate association: *Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1995) ("[W]e think a spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association."); *Adkins v. Board of Educ.*, 982 F.2d 952, 955 (6th Cir. 1993) (upholding claim that denial of continued employment because school superintendent's dislike of employee's husband violated her First Amendment right of intimate association); and *McCabe v. Sharrett*, 12 F.3d 1558 (11th Cir. 1994) (Doc. 35 at pp. 4-5).

Notably, in *Adler*, the Second Circuit recognized that it has not been "authoritatively determined" whether the source of the intimate association right is grounded in the First Amendment or the due process clause of the Fourteenth Amendment. *Adler*, 185 F.3d at 42.

Most importantly, the Seventh Circuit has consistently distinguished the two types of free associations and held that the right of intimate association is protected by the due process clause of the Fourteenth Amendment. *See Montgomery*, 410 F.3d at 937; *Christensen v. County of Boone,* 483 F.3d 454, 463 (7th Cir. 2007) (examining a couple's right to intimately associate with one another under the lens of the Fourteenth Amendment, not the First Amendment). In *Norman-Nunnery v. Madison Area Technical College*, the Seventh

Circuit acknowledged that the Second Circuit has applied the First Amendment to a similar intimate association claim, but ultimately declined to do so because the plaintiff's claim in that case failed for lack of evidence. *Norman-Nunnery v. Madison Area Technical College*, 625 F.3d 422, 433 (7th Cir. 2010).

Other district courts within the Seventh Circuit have applied the law stated in *Montgomery* to claims similar to this one and found that they fail to state a First Amendment claim. *See, e.g., Wesley v. South Bend Community School Corp.*, Case No. 3:19-cv-0003-PPS-MGG, 2019 WL 5579159, at *3-4 (N.D. Ind. Oct. 29, 2019) (finding that the plaintiff's claim that the defendant retaliated against him because of the expressive conduct of his family members arose under the Fourteenth Amendment, not the First Amendment); *see, e.g., Allen v. City of Moline*, Case No. 4:17-cv-04066-JES-JEH, 2017 WL 5617060, at *3 (C.D. Ill. Nov. 21, 2017) (finding that the plaintiff's claim that supporting his wife resulted in retaliation against him arose under the Fourteenth Amendment, not the First Amendment); *Rojas v. Dominick*, Case No. 08 C 5913, 2011 WL 2292315, at *3 (N.D. Ill. June 8, 2011) (finding that the plaintiff's claim that the defendants terminated him because of the statements and/or political positions taken by either his wife or his wife's family arose under the due process clause, not the First Amendment). Thus, the Court agrees with Fletcher that this claim should have been brought under the Fourteenth Amendment, not the First Amendment. Nonetheless, the Seventh Circuit has held that a "complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992).

Fletcher next argues that the claim should be dismissed because it fails to rise to the level of conduct that "shocks the conscience." The Court agrees that this standard

Page 7 of 13

should apply. "The right to due process is violated when a state actor abuses his office to directly and substantially interfere with a liberty interest, and the nature of the interferences 'shocks the conscience.'" *Presley v. Board of School Directors of Rankin School District No. 98*, No. 14-cv-1055, 2014 WL 1468087, at *2 (C.D. Ill. Apr. 15, 2014) (citing *Christensen*, 483 F.3d at 464). Conduct shocks the conscience when it violates "the decencies of civilized conduct" or was "so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency." *County of Sacramento v. Lewis*, 523 U.S. 833, 846-847 (1998); *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957).

The Court has considered the cases cited by Fletcher and agrees that the allegations of the First Amended Complaint fail to rise to the conscience-shocking standard. Notably, Hopfinger fails to point to any case law showing otherwise. Moreover, at least one other district court within this circuit has found that similar conduct failed to "come close to rising to the level of shocking the conscience." *Wesley*, 2019 WL 5579159, at *6. Accordingly, the Court grants Fletcher's Motion to Dismiss Count IV.[2]

## II. Motion to Dismiss filed by Defendants the City, Rolf, Fark, Finke, Kozuszek, Hargen, Sheridan, and Kellerman

Defendants the City of Nashville, Rolf, Fark, Finke, Kozuszek, Hargen, Sheridan, and Kellerman (collectively, "Defendants") seek to dismiss Counts III, IV, and V of the First Amended Complaint for failure to state a claim (Doc. 29 at ¶¶ 3-5).

### A. Breach of Contract Claim against the City of Nashville (Count III)

In Count III, Hopfinger brings a breach of contract claim against the City of

---

[2] Because Hopfinger fails to state a claim for a constitutional violation under Count IV, the Court need not address the question of qualified immunity.

Nashville. Specifically, the City of Nashville Employee Handbook provides:

> An employee is allowed a total of 12 weeks off—whether that time is paid or unpaid—for FMLA reasons during any 12 month time period. The 12 month FMLA period will begin on the employee's first day of FMLA leave.

(Doc. 17, p. 8; Doc. 17-2, p. 1). Hopfinger alleges that the City of Nashville breached this provision of the contract when her employment was terminated (Doc. 17, p. 8).

Defendants argue that, given that Hopfinger has alleged a federal statutory claim under the FMLA in Counts I and II of her First Amended Complaint, Count III fails to state a claim because the statutory remedies under the FMLA are exclusive, and recovery under a state law theory of breach of contract is duplicative (*Id.* at ¶ 3). Defendants cite three cases in support of their argument: *Alvarez v. Hi-Temp Inc.*, 2004 WL 603489, at *5 (N.D. Ill. Mar. 24, 2004); *New v. Belk Stores*, 2000 U.S. Dist. LEXIS 23522, at *8 (D.S.C. Oct. 5, 2000); and *Desrochers v. Hilton Hotels Corp.*, 28 F. Supp. 2d 693, 695 (D. Mass. 1998) (Doc. 30 at p. 3). Hopfinger argues that the facts and legal claims of these cases differ from her case, and thus, these cases are not applicable to her breach of contract claim (Doc. 36 at pp. 2-4).

In *Alvarez*, a district court in the Northern District of Illinois held a claim for negligent supervision was premised on the violation of a right created by the FMLA, and was barred under the doctrine of conflict preemption. *Id.* at * 3. The courts in *New* and *Desrochers* found that a state law claim would be duplicative and thus be preempted where plaintiff sought to vindicate rights under the FMLA. *New*, 2000 U.S. Dist. LEXIS 23522, at *8; *Desrochers*, 28 F. Supp. 2d at 694. Although these decisions by other federal district courts are persuasive, unfortunately, none of these decisions provides binding precedent.

In deciding whether a state law claim of breach of contract is preempted by the FMLA, this Court examines the text of the statute to determine if it is the "clear and manifest purpose of Congress" to preempt an area of state law. *CSX Transp. v. Easterwood*, 507 U.S. 658, 664 (1993). Congressional intent is the "ultimate touchstone" guiding preemption analysis. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987). "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). If the statute contains an express preemption clause, the statutory construction should focus on the plain meaning of the clause as the best evidence of Congress's preemptive intent. *CSX Transp.*, 507 U.S. at 664; *see also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992).

No provision of the FMLA evinces an intent by Congress that the FMLA interference and retaliation claims should be the exclusive province of the federal courts. In fact, the plain language of Section 2651(b) provides: "Nothing in this Act…shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established by this Act." FMLA, 29 U.S.C. § 2651(b). Further, the Supreme Court has recognized complete preemption in only three federal statutes: (1) Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185; (2) Section 1132 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*; and (3) Sections 85 and 86 of the National Bank Act, 12 U.S.C. § 21 *et seq. See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-11 (2003).

Additionally, although the Seventh Circuit has not yet thoroughly reviewed the precise issue of whether the plain language of the FMLA completely preempts state law,

on appeal, it did acknowledge both a violation of the FMLA claim and a breach of contract claim in an FMLA retaliation case. *See Wink v. Miller Compressing Co.*, 845 F.3d 821 (7th Cir. 2017).

Overall, Defendants have not cited to any binding Seventh Circuit case law indicating that the breach of contract claim should be dismissed as duplicative. Absent such authority, the Court will not dismiss the claim at this stage of the case. Accordingly, the Court denies Defendants' Motion to Dismiss Count III.

### B. First Amendment Association Claim (Count IV)

Defendants also assert that Count IV should be dismissed because Hopfinger's freedom of association claim is a due process claim, and the First Amended Complaint fails to state a plausible claim for such relief (Doc. 29 at ¶ 4). Defendants also contend that they are entitled to qualified immunity on this claim (*Id.*). The Court has already discussed this argument in Section I above, as it was raised by Defendant Fletcher. For the reasons set forth above, the Court grants Defendants' Motion to Dismiss Count IV.

### C. First Amendment Retaliation Claim against the City (Count V)

Finally, Defendants argue that Count V must be dismissed because Hopfinger is essentially reframing her FMLA claim as a civil rights action brought under 42 U.S.C. § 1983, but she fails to state a claim for that relief (Doc. 29 at ¶ 5). Relying on *Clay v. City of Chicago, Dep't of Health*, No. 96 C 3684, 1996 WL 613164, at *2 (N.D. Ill. Oct. 22, 1996), Defendants assert that 42 U.S.C. § 1983 is not available to enforce violations of federal statutes that otherwise have comprehensive enforcement schemes (Doc. 30 at p. 5).

Hopfinger responds that her First Amendment retaliation claim is separate from her FMLA claims because she alleges that Defendants fired her in violation of the First

Amendment for speaking out about matters of public concern (Doc. 36 at pp. 7-8). Specifically, she alleges that she was fired because she complained to the Illinois Law Enforcement Training Standards Board that Fletcher falsified some documents, and she complained to the mayor that Fletcher was failing to provide sufficient information to account properly for his absences (Doc. 17, pp. 12-13).

In *Clay*, the defendants moved to dismiss the plaintiff's Section 1983 claims for violations of the FMLA and ADA on the basis that Section 1983 is not available to enforce violations of federal statutes that otherwise have comprehensive enforcements schemes. *Clay*, 1996 WL 613164, at *2. The Court noted that the plaintiff conceded the issue and dismissed those Section 1983 claims. *Id*. In *Jolliffe*, another district court similarly concluded that the FMLA provides a comprehensive enforcement scheme which forecloses a Section 1983 claim because the injuries to which the FMLA applies are narrowly drawn, and the remedies provided fully cover those injuries. *See Jolliffe v. Mitchell*, 971 F. Supp. 1039, 1045 (W.D. Va. 1997). The court specifically noted, however, that the section 1983 claim was *based on the FMLA violation*. *See Jolliffe*, 971 F. Supp. at 1044 (emphasis added).

Here, Hopfinger's FMLA claims are based on her sick leave and subsequent discharge in violation of FMLA Sections 2612(a)(1)(D) and 2614(a)(1). In her FMLA retaliation claim, she specifically alleges that Defendant Nashville refused to allow her to return to work in retaliation for the exercise of her rights under the FMLA. Hopfinger's Section 1983 claim, however, is based on a violation of her First Amendment right to speak on matters of public concern. Specifically, as an independent basis for this claim, Hopfinger alleges that she was fired because she complained to the Illinois Law

Enforcement Training Standards Board that Fletcher falsified some documents, and she complained to the mayor that Fletcher was failing to provide sufficient information to account properly for his absences. After reviewing the parties' limited arguments on this issue, the Court finds that Hopfinger is entitled to bring a Section 1983 First Amendment Retaliation claim in addition to her FMLA claims. Therefore, the Court denies Defendants' motion to dismiss Count V.

## Conclusion

For the reasons set forth above, the Court **GRANTS** the Motion to Dismiss Count IV filed by Defendant Fletcher (Docs. 24 and 25). The Court also **GRANTS in part** and **DENIES in part** the Partial Motion to Dismiss filed by Defendants the City, Rolf, Fark, Finke, Kozuszek, Hargen, Sheridan, and Kellerman (Docs. 29 and 30). The motion (Docs. 29 and 30) is granted as to Count IV and denied as to Counts III and V. Count IV of Plaintiff's First Amended Complaint is **DISMISSED with prejudice**.

IT IS SO ORDERED.

DATED: December 2, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**